**O**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER NEALY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3287 |
| | § | |
| PATTERSON DENTAL SUPPLY, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Plaintiff's Motion to Exclude and for *Daubert* Hearing (Document No. 22) and Defendant's Motion for Summary Judgment (Document No. 23). After carefully considering the motions, responses, reply, surreply, and applicable law, the Court concludes as follows:

## I. Background

Plaintiff Jennifer Nealy ("Plaintiff"), a former customer service representative at Patterson Dental Supply, Inc. ("Defendant"), alleges that Defendant unlawfully terminated her in violation of the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"), after she returned

to work shortly after suffering an at-home accident in which she severed two fingers in her dominant right hand.[1]

Defendant, with offices nationwide, sells supplies and equipment to dentists. Defendant's Houston office, where Plaintiff worked, employed approximately fifty employees, including four customer service representatives like Plaintiff. As a customer service representative ("CSR"), it was Plaintiff's responsibility to answer phones, speak to customers, fax and copy documents, file documents, enter orders onto a computer, mail catalogs, and process refunds and credits. Document No. 23 exs. A at 64; F.

Plaintiff had worked for Defendant for approximately four and a half months when an at-home accident severed the ring and pinky fingers on her dominant right hand. As a result of the injury, Defendant granted Plaintiff an immediate, temporary leave of absence while she had two surgeries performed to reattach the fingers. Three days after the accident, Plaintiff visited Patterson Dental Supply to collect her paycheck and ask if she could be placed on short-term disability. Sherry Hale ("Hale"), the Operations Manager, inquired about short-term disability for Plaintiff but determined that Plaintiff was not eligible because she had worked fewer than 12 months, which was required by company policy. A few days later, Plaintiff asked Hale if she could return

[1] Plaintiff's fingers were reattached during two surgeries immediately following the accident.

to work and Plaintiff faxed a note from her doctor releasing her to do so. The note, entitled "Activity Restrictions," stated that Plaintiff was to have "[n]o movement of affected body part" when she returned to work. Document No. 23 ex. J. The note did not indicate how long the activity restriction was to last.

Ten days after the accident and after undergoing a third surgery to fuse her knuckles and attempt to regain mobility in her fingers, Plaintiff returned to work. Upon her return Plaintiff told Hale and Tim Wagstaff ("Wagstaff"), Branch Manager for Defendant's Houston location, that she needed to be absent from work at least two mornings per week on an indefinite basis to attend physical therapy appointments, as well as monthly doctor appointments. Wagstaff asked Plaintiff to report to her work station and informed her that she would be observed throughout the day to see if she could perform her job duties. *See* id. ex. C ¶ 4. Wagstaff and Hale then monitored Plaintiff for the next six hours by periodically walking past her desk. They ultimately determined that Plaintiff could not perform the CSR job in an efficient and timely manner, and Wagstaff terminated Plaintiff that same afternoon.[2] Id. ex. C ¶ 6. Wagstaff avers that he terminated

[2] Specifically, Wagstaff states that he observed Plaintiff struggling to perform the following tasks: answering the phone while typing orders; entering data into the computer system and taking customer orders; handling catalogs and files; writing orders; retrieving information from customer files in a timely manner; and processing customer credits. Document No. 23 ex. C ¶ 5. Hale testified in her deposition that when she walked by

Plaintiff only after determining that the three remaining CSRs would be unable to assume Plaintiff's duties and there were no alternate, available positions in the Houston office for which Plaintiff was qualified.

Plaintiff claims she is disabled because her hand condition has rendered her unable to perform, or has significantly restricted her performance of, major life activities including her ability to perform manual tasks and to care for herself, and Plaintiff claims that Defendant unlawfully terminated her because of her disability. In the alternative, Plaintiff claims that Defendant regarded her as being disabled in the major life activities of performing manual tasks and working and terminated her as a result. Plaintiff claims that she was a qualified individual under the ADA because she could perform the essential functions of her job, albeit at a slower pace, and Defendant refused to accommodate her impairment.

Defendant contends that summary judgment should be granted on Plaintiff's disability claims because Plaintiff cannot establish that she was disabled or qualified under the ADA, as required for her *prima facie* case. Defendant also asserts that its legitimate, non-discriminatory reason for terminating Plaintiff was because Plaintiff was unable to perform her job. Defendant now moves for complete summary judgment on all of Plaintiff's claims, while

---

Plaintiff's station, she noted that Plaintiff could complete orders but was working at a "slower pace" than normal. Document No. 30 ex. 3 at 44.

Plaintiff moves to exclude the testimony, report, and opinions of Defendant's expert witness G. Whitney Smith, or alternatively, for a *Daubert* hearing.

## II. Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive

evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the fact finder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

## III. Discussion

To establish a *prima facie* case of discrimination under the ADA and Texas Labor Code, a plaintiff must show that: (1) she had a disability; (2) she was qualified for the job; and (3) an adverse employment decision was made because of her disability. *See* Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999) (citing 42 U.S.C. § 12112(a)). The threshold requirement in Plaintiff's *prima facie* case is to show that she suffers from a disability protected by the ADA or the Texas Labor Code. Talk, 165

F.3d at 1024. Disability is defined under the ADA, and similarly under the Texas Labor Code, as: (1) a physical or mental impairment that substantially limits one or more major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2); TEX. LAB. CODE ANN. § 21.002(6); Talk, 165 F.3d at 1024. To be substantially limiting, the impairment must make the individual "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to [the general population]."[3] Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2145 (1999) (quoting 29 C.F.R. § 1630.2(j)). Relevant factors in determining whether an impairment substantially limits a major life activity include: the nature and severity of the impairment, its duration, and its permanent or long-term impact. Talk, 165 F.3d at 1024. As such, temporary, non-chronic impairments of limited duration, with little or no longer term or permanent impact, are usually not

[3] Major life activities are the basic tasks of central importance to most people's daily lives. They include activities that average persons can perform with little or no difficulty, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* Talk, 165 F.3d at 1025 (citing 29 C.F.R. § 1630.2(i)).

disabilities. Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998) (quoting 29 C.F.R. § 1630.2(j)).

A. Actual Disability

Plaintiff in her Declaration states that after the injury, she had "severe restrictions on the use of my right hand--more specifically, my ring and pinky fingers. In fact I had no use of them at the time. Having had three surgeries and attended physical therapy as much as I could afford, I still have restricted movement in these fingers due to scarring and the metal pins in my hand." Using the past tense, she states that she, as a result of the injury, was "unable to perform any routine daily life functions and tasks, to care for her son, including bathing him, dressing him, preparing food for him, and other every day activities." She had similar difficulties clothing herself, applying make-up and otherwise attending to her personal care. She states that she had difficulty with indoor and outside chores, such as doing laundry, particularly folding and putting sheets on the beds. Due to her "inability to grasp, I was unable to sweep, and had difficulty vacuuming and dusting. I also couldn't mow the lawn and had difficulty bagging trash." Plaintiff then concedes in her Declaration that she has had "some improvement," although she will need additional surgeries to remove scarring tissue and to remove the pins in her hand where her fingers were re-attached. She

states that she compensates by relying more on her left hand and her three healthy fingers and is therefore able to do some of the tasks that she previously could not do, "although I continue to have severe limitations on the ability to grip or grasp with my right, dominant hand. I still have restricted motion and experience significant pain."

Defendant objects that Plaintiff's Declaration, dated more than four months after her oral deposition, which was taken on May 31, 2005, understates the level of Plaintiff's recovery and in that sense is inconsistent with her sworn testimony.[4] In her deposition, Plaintiff testified that she can now move her ring finger but still has no movement in her pinky finger, and that she can type. She further testified that she has pain perhaps two or three times a week, just "depending on whether or how . . . I bang it, and stuff like that"; that when she has pain, she sometimes does nothing for it and sometimes takes ibuprofen, but never prescription medicine; and that she no longer has problems taking care of her son as a result of the injury. As for herself, she stated that she still doesn't mow the grass. Plaintiff further testified that she now is able to wash her face, use the bathroom, do laundry, dress herself, drive an automobile, do grocery

---

[4] *See, e.g.*, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")

shopping, lift a bag of groceries, lift up to 25 pounds in weight, do housekeeping, bathe, shower, take out the trash, sit, stand, and cook. When asked if there were any housekeeping tasks that she was unable to perform, she answered, "Like I said, I just don't mow the lawn anymore . . . [b]ecause after a certain amount of time trying to grip, I don't feel comfortable." Defendant asserts on this summary judgment record that (1) Plaintiff is capable of performing essentially all activities of daily living, and (2) any substantial restrictions that Plaintiff may have encountered occurred immediately after the injury and were not permanent or long-term as the ADA case law requires.

"[I]mpairments that interfere in only a minor way with the performance of manual tasks [are precluded] from qualifying as disabilities. . . . When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 122 S. Ct. 681, 691-93 (2002) (noting that an individual must be "prevent[ed] or severely restrict[ed]" in her performance of daily tasks, and "[t]he impairment's impact must also be permanent or long term").

Here, the uncontroverted summary judgment evidence is that Plaintiff's hand impairment for a while prevented or made it *difficult* for her to perform a number of daily activities, but she

has not identified any tasks that her hand impairment thereafter has *prevented* or *severely restricted* her from performing except for mowing the lawn, which is not a task central to daily life. Thus, even if Plaintiff is impaired in her ability to grip or grasp objects with her right hand and experiences some restricted motion, she has not produced evidence that her impairment substantially interferes with her performance of manual tasks so as to qualify as a disability under the ADA. Plaintiff even admits in her Declaration that she now can perform daily tasks she previously could not by relying more on her three healthy fingers and using her left hand. Document No. 30 ex. 1 ¶ 23 ("By compensating, I have been able to do some of the tasks I couldn't previously do . . ."). Individuals such as Plaintiff who can complete the tasks of daily living by relying on healthy limbs or otherwise compensating for their injuries are not substantially limited in major life activities. *See, e.g.,* Still v. Freeport-McMoran, Inc., 120 F.3d 50, 52 (5th Cir. 1997) (finding that an individual who was permanently blind in one eye was not substantially limited in the major life activities of seeing or working because he could see well enough with the healthy eye to engage in most daily activities); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995) (finding that a welder who injured her arm in a gun accident was not substantially limited in any major life activities despite problems picking up items off the floor, holding things,

and turning the car's ignition, because she could still "take care of the normal activities of daily living"). Plaintiff has presented no summary judgment evidence of any substantially restricted major life activity--either in terms of performing manual tasks or otherwise--and has thus failed to raise so much as a fact issue that her hand impairment rises to the level of a disability within the meaning of the ADA.[5]

B. Regarded as Disabled

In the alternative, Plaintiff claims that Defendant regarded her as disabled in performing manual tasks and working, and terminated her as a result. Under the ADA, an individual may qualify as "disabled" if she is "regarded as" (1) having an impairment, that (2) substantially limits one or more major life activities.[6] Deas v. River West, L.P., 152 F.3d 471, 476 (5th Cir.

---

[5] *See, e.g.*, Robinson v. Global Marine Drilling Co., 101 F.3d 35, 37 (5th Cir. 1996) (finding that individual with asbestosis suffered from an impairment, not a disability, despite 50% reduced lung capacity); Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) (holding evidence of "a 13% permanent, partial disability to [the] entire body" insufficient to show that plaintiff was substantially limited in performing a major life activity, as afflictions were not "chronic or severe enough to constitute a disability").

[6] The Supreme Court has explained there are two ways an individual can show she was "regarded as" disabled: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2149-2150 (1999).

1998). In other words, an employee may be "regarded as" disabled if she "has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limited impairment." Blanks v. Sw. Bell Commc'ns., 310 F.3d 398, 402 (5th Cir. 2002) (quoting Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996)). However, an employer "is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." Sutton, 119 S. Ct. at 2150 (emphasis in original). Since the uncontroverted summary judgment evidence establishes that Plaintiff in the days immediately after her injury had an impairment, which Defendant recognized, the issue here is whether Plaintiff has produced summary judgment evidence sufficient for a reasonable trier of fact to find that Defendant regarded Plaintiff's hand condition as substantially limiting the major life activities of working or performing manual tasks.

For an employer to regard an impairment as substantially limiting the activity of working, the employer must perceive the individual as unable to perform a class of jobs or a broad range of jobs in various classes. *See* Blanks, 310 F.3d at 402 ("If the employee is merely excluded from a narrow range of jobs, then he or she is not 'regarded as' disabled under this prong"); *see also* Bridges, 92 F.3d at 332 (no ADA violation where employer regarded plaintiff as substantially limited only in narrow range of jobs

involving routine exposure to trauma). In support of her assertion that Defendant regarded her as disabled in the major life activity of working, Plaintiff cites the deposition testimony and personnel notes of Wagstaff, the ultimate decisionmaker behind Plaintiff's termination. Wagstaff testified that upon observing Plaintiff the day she returned to work after her accident, it was "obvious to the casual observer that [Plaintiff] was having difficulty doing anything that day." Document No. 30 ex. 2 at 33-34. Specifically, Wagstaff noted in his personnel notes that it was difficult for Plaintiff to operate the computer, answer the phone, and write orders. Id. ex. 5. Wagstaff further testified that it was his understanding, based on Plaintiff's faxed medical release and Plaintiff's oral representations, that Plaintiff was limited in her ability to use her right hand, operate the keyboard, and write orders. Hale also testified that she believed--based on the doctor's faxed note--that Plaintiff could do "[n]othing" with her right hand upon returning to work, and Hale did not know how long the activity restriction would continue. Id. ex. 3 at 60, 79, ex. 2 at 33-34. After watching Plaintiff at work for six or seven hours, Wagstaff decided that Plaintiff could not perform the job duties of CSR, primarily because she could not use her right hand. Id. at 31-32. In his personnel notes from the day Plaintiff was terminated, he noted there was "[n]o position available--for a left hand employee." Id. ex. 5. Plaintiff avers that Wagstaff told her

she was being discharged because her finger injury precluded her from fully performing her job. Id. ex. 1 ¶ 14. Plaintiff acknowledged in her deposition that Wagstaff also told her to check back after her hand healed and that she would be considered then for any opening.

Considered in the light most favorable to Plaintiff, the summary judgment evidence indicates that ten days after Plaintiff severed her two fingers, during which she had three surgeries to help repair the damage, Defendant found Plaintiff severely restricted in her ability to use her right hand and thus to perform the CSR job at that time. There is no summary judgment evidence, however, that Defendant perceived Plaintiff as substantially limited in her ability to perform a broad class of jobs or to work in general, but only that Defendant had no such job to offer her in the immediate aftermath of her injury. Plaintiff herself testified that even before her injury she was not aware of any job that she would be able to perform at Defendant except that of CSR. Nonetheless, Defendant considered transferring Plaintiff to a receptionist position but decided that she was not qualified to perform the essential functions of a receptionist job, with or without reasonable accommodation, because of the doctor-imposed activity restrictions and Plaintiff's oral statement that she needed to keep her arm elevated. Document No. 30 ex. 13. Defendant's belief that Plaintiff's injury would inhibit her

performance as a CSR or receptionist--two jobs with overlapping demands of extensive typing, filing, and other administrative tasks at a fast pace--is not evidence, as Plaintiff claims, that Defendant regarded Plaintiff as substantially limited in her ability to perform a broad class of jobs or to work in general. At most, Defendant regarded Plaintiff at that time as disqualified from a narrow range of jobs that demanded a similar skill set, which is insufficient to raise a fact issue that Defendant regarded Plaintiff as disabled under the terms of the ADA.[7]

Plaintiff also asserts that Defendant regarded Plaintiff as disabled in the major life activity of performing manual tasks, which means that Defendant perceived Plaintiff as severely restricted in performing day-to-day tasks on a long-term basis. However, Plaintiff has produced no evidence that Defendant had mistaken beliefs as to Plaintiff's long term ability to perform daily tasks that are central to most people's daily lives. In fact, Wagstaff's invitation to Plaintiff to check back after her hand healed on whether there was an available job is uncontroverted

---

[7] Fifth Circuit case law routinely holds that exclusion from a narrow range of jobs is insufficient to support a finding that a plaintiff is "regarded as" substantially limited in the major life activity of working. *See, e.g.*, Blanks, 310 F.3d at 402 (employee not regarded as disabled when employer found him unable to perform "only the particular job of customer service representative," due to its unique demands and stresses); Bridges, 92 F.3d at 335-36 (affirming denial of employee's "regarded as" disabled claim because an exclusion from all firefighting jobs "is too narrow a field to describe a 'class of jobs'" and was therefore permissible under the ADA).

evidence that Defendant's decisionmaker did not regard her injury as a severe restriction for the long term or on a permanent basis. In sum, Plaintiff has failed to demonstrate a genuine issue of material fact that Defendant mistakenly regarded her as substantially limited in the major life activities of performing manual tasks or working and hence, disabled within the meaning of the ADA. *See* Rakity v. Dillon Companies, Inc., 302 F.3d 1152, 1162 (10th Cir. 2002). Accordingly, Defendant's Motion for Summary Judgment will be granted.

## IV. Order

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (Document No. 23) is GRANTED; it is further

ORDERED that Plaintiff's Motion to Exclude and for a *Daubert* Hearing (Document No. 22) is DENIED AS MOOT.

The Clerk will enter this Order and send a copy to all counsel of record.

SIGNED at Houston, Texas this 22nd day of November, 2005.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE